IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| OTIS STOWE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:14-cv-01065-TMP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.   Introduction**

The plaintiff, Otis Stowe, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Stowe timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Stowe was forty-two years old at the time of the alleged onset of disability, August 1, 2010. (Tr. at 52). His past work experiences include

employment as a delivery truck driver, a tractor trailer truck driver, and a concrete truck driver. *Id.* Mr. Stowe claims that he became disabled on August 1, 2010, due to a knee injury, back pain, and diabetes. (Tr. at 43, 157).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's

impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Stowe meets the insured status requirements of the Social Security Act through December 31, 2015. (Tr. at 45). He further determined that Mr. Stowe has not engaged in substantial gainful activity since the alleged onset of his disability. *Id*. According to the ALJ, Plaintiff's diabetes mellitus with neuropathy, degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the knees, right shoulder AC separation, and borderline intellectual functioning are considered "severe" based on the requirements set forth in the regulations. *Id*. However, he found that the plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 47). The ALJ did not find Mr. Stowe's statements regarding the severity and limiting effects of his impairments to be fully credible, and he determined that he has the RFC to perform sedentary work as described in 20 CFR 404.1567(a) and 416.967(a) and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can only frequently reach overhead; cannot climb ladders, ropes, or scaffolds; cannot tolerate concentrated exposure to extreme cold, wetness, or humidity or any exposure to unprotected heights or hazardous moving machinery; has the ability to understand, remember, and carry out simple but not detailed or complex instructions; can

perform work activities involving no more than occasional decision-making and no more than occasional changes that are gradually introduced and well explained; can interact with the public, co-workers, and supervisors on no more than an occasional basis; and should avoid performing tandem tasks with coworkers. (Tr. at 49, 50).

According to the ALJ, Mr. Stowe is unable to perform any of his past relevant work. He was a "younger individual" as of the alleged disability onset date. He has a limited education and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 52-53). The ALJ determined that transferability of job skills is not material to the determination of disability. (Tr. at 53). Even though Plaintiff cannot perform the full range of sedentary work, the ALJ determined that he can perform a limited range of sedentary work and there are a significant number of jobs in the state and national economy that he is capable of performing, such as button and notion assembler, final assembler in the optical goods industry, and pharmaceutical packer. *Id.* The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from August 1, 2010, through the date of this decision." (Tr. at 54).

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there

is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting), quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal

standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

### III. Discussion

Mr. Stowe argues that the ALJ's decision should be reversed and remanded for two reasons: first, he contends that the ALJ failed to incorporate all of his impairments into the RFC determination, specifically as it concerns neck flexion,

extension, and rotation; and, second, that the ALJ failed to properly apply the Eleventh Circuit's pain standard.

### A. Incorporation of Impairments

The plaintiff argues that, despite finding the plaintiff had the severe impairment of degenerative disc disease ("DDD") of the cervical spine, the ALJ failed to take into account all the limitations from this impairment in making his RFC determination.  Due to the ALJ's failure to incorporate limitations from the plaintiff's degenerative disc disease, the plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and is due to be reversed. The plaintiff points out that medical records from his examination by Dr. Larry O. Skelton illustrate that the plaintiff has a severely reduced range of motion in his neck.  Specifically, the plaintiff suffers from reduced flexion, extension, and rotation of the neck.  Dr. Skelton's findings show that the plaintiff has actual flexion of 30 degrees, actual extension of 10 degrees, right lateral flexion of 15 degrees, left lateral flexion of 15 degrees, and right and left rotation of 50 and 40 degrees, respectively.  (Tr. at 253).  The state agency physician, Dr. Marcus Whitman, requested an x-ray of the plaintiff's cervical spine.  (Tr. at 255).  The x-ray indicated a loss of normal curvature, osteophyte formation, and crowding of the

neural foramen of C3 through C8, which, according to the records, resulted in the plaintiff's diagnosis of severe degenerative joint disease of the cervical spine.

The plaintiff further claims that the ALJ failed to include any limitations in neck movement in his hypotheticals to the VE and, therefore, the VE's testimony cannot constitute substantial evidence to support the ALJ's determination of the plaintiff's ability to perform certain jobs.  The ALJ stated the following regarding the plaintiff's cervical spine:

> Specifically, the claimant's musculoskeletal impairments fail to meet or medically equal listings 1.02 or 1.04. . . . Similarly, while x-ray and CT results reveal degenerative changes in his cervical and lumbar spine, the evidence of record overall fails to establish evidence of neural impingement, spinal stenosis, or neural foraminal stenosis (Exhibits 3F, 4F, 7F, 12F, 13F).

(Tr. at 47).  In his determination of the plaintiff's RFC, the ALJ also discusses the plaintiff's musculoskeletal impairments:

> The claimant's musculoskeletal complaints are also documented. . . . The claimant also demonstrated decreased ROM in both shoulders and *his neck* at that examination as well as 3+/5+ muscle strength in his arms and 3+/5+ grip strength bilaterally.  April 2011 right shoulder films revealed a grade two AC separation while *cervical spine x-rays revealed osteophyte formations crowding the neural foramen from C3 through C8 that Dr. Skelton described as suspicious for severe degenerative joint disease* (Exhibit 7F).
>
> . . .

> It is . . . reasonable that he would see an exacerbation of neck and shoulder pain with more than frequent overhead lifting. The undersigned has considered all of these factors as well as the nature of the claimant's particular impairments in the residual functional capacity for a restricted range of sedentary work set forth above.
>
> . . .
>
> As for the opinion evidence, the undersigned accords partial weight to Dr. Skelton's opinions as reflected in this report of examination but notes that the examiner included no clear functional limitations in that report other than a recommendation that the claimant use a cane for balance when necessary (Exhibit 4F).

(Tr. at 50-52) (italics added).

The plaintiff argues that the VE's testimony regarding the plaintiff's ability to perform certain jobs is not adequately supportive of the RFC determination because the ALJ did not specifically mention the plaintiff's decreased range of motion in his hypothetical questions to the VE. However, the transcript reflects that the ALJ put forth a hypothetical restricting the plaintiff to sedentary work with limited overhead reaching. The ALJ specified in his RFC determination that the reaching restriction was pursuant to the plaintiff's musculoskeletal impairments, including the reduced ROM in his neck and the evidence of severe DDD in the cervical spine. The fact that the ALJ did not find the impairment to be as severely limiting as the plaintiff argues does not mean that the ALJ failed to consider and

evaluate the impairment, or that the determination is not based on substantial evidence.  The nature and extent of the plaintiff's RFC and the application of vocational factors are "opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).

The ALJ is not required to refer to every piece of evidence in his determination, so long as his denial of the plaintiff's claim is not an arbitrary dismissal that does not consider the plaintiff's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citations omitted).  A review of the ALJ's RFC determination persuades the court that the ALJ did consider the plaintiff's medical condition as a whole, including the ROM limitations in his neck.  After considering the entire record, the ALJ determined that the plaintiff has the RFC to perform sedentary work with several exceptions.  He specifically addressed the plaintiff's cervical spine impairments in his discussion of the plaintiff's RFC.  It is not the purview of the court to make factual determinations or reweigh the evidence, so long as the ALJ's decision is supported by substantial evidence.  In light of the medical records and subjective testimony addressed in the ALJ's opinion, the court is convinced that the ALJ's determination is supported by substantial evidence.

## B.     Pain Standard

The plaintiff argues that the ALJ's decision should be reversed and remanded because the ALJ failed to evaluate properly the credibility of the Plaintiff's testimony regarding his disabling symptoms consistent with the Eleventh Circuit pain standard. Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ discussed the plaintiff's allegations of the pain and severity of his impairments in conjunction with the medical record:

> The claimant alleges constant pain in his back, left leg, neck, shoulders, and/or head that he rates as seven to eight on a scale of one to 10 (7-8/10) on an average day but with occasional exacerbations to

even more severe levels. He alleges that he is able to stand no longer than 10 to 15 minutes, sit no longer than 30 minutes, walk less than a block, and lift no more than five to 10 pounds. He testified that he uses a cane for balance as necessary on the recommendation of Dr. Skelton. The claimant testified that his diabetes medications have had to be changed numerous times because his condition is getting worse and that he takes several pain medications in addition to his diabetes medications.

After careful consideration of the evidence, the undersigned finds that the claimant has medically determinable impairments that could reasonably be expected to cause symptoms such as those alleged; however, the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are inconsistent with the evidence of record and are not fully credible.

Objective medical evidence establishes that the claimant has poorly controlled diabetes but also establishes a history of poor compliance with treatment (Exhibits 2F, 3F, 12F, 13F). He has frequently been found to be off medications or taking them incorrectly, fails to follow a diabetic diet consistently, and does not monitor his blood sugar regularly. It was during one such a period that the claimant filed his application for disability and established care at Whatley Health Services. His glucose level was 323 at the time, and he demonstrated decreased sensation over the dorsal aspect of both feet consistent with diabetic neuropathy. However, the claimant's records also show that his blood sugar control improves significantly when his compliance improves. He was prescribed medications through the clinic, and when he returned for follow-up, his glucose was 117, and his HbA1c, a test used to determine how well an individual's diabetes is being controlled, was 5.6% -- well below the goal of less than 7% generally sought for known diabetics. The claimant's compliance had waned by the time of his next visit with expected results – his glucose was 147 and his A1C had increased to 7.2%. The examination also found decreased sensation in the bottom of his right foot. The pattern has continued despite his receiving counseling on the importance of medication and diet compliance.

The claimant's musculoskeletal complaints are also documented. He was evaluated for a possible disc herniation in October 2009 based on his complaints of severe back pain with lower extremity numbness, but a lumbar spine MRI showed only mild DDD at L4-5 and L5-S1 with no neural impingement (Exhibit 2F). He has continued to report pain in his lower back off and on throughout the pertinent period and exhibits decreased lumbar range of motion (ROM) on examination; however, straight leg raising is negative and, as recently as March 201[1], a lumbar CT scan produced results similar to the benign October 2009 results (Exhibit 13F). The claimant voiced complaints of constant knee pain as well as constant back pain at the March 2011 consultative physical examination (Exhibit 4F). He exhibited decreased flexion in his right knee on examination, and x-rays of that joint revealed moderate osteophyte formation. The claimant also demonstrated decreased ROM in both shoulders and his neck at that examination as well as 3+/5+ muscle strength in his arms and 3+/5+ grip strength bilaterally. April 2011 right shoulder films revealed a grade two AC separation while cervical spine x-rays revealed osteophyte formations crowding the neural foramen from C3 through C8 that Dr. Skelton described as suspicious for severe degenerative joint disease (Exhibit 7F). Dr. Skelton also found decreased muscle strength in both of the claimant's legs and, noting that the claimant's gait was so antalgic that he had to grab onto things to keep from falling, observed that he appeared to need a cane.

At the hearing, the claimant testified that he was using a cane because of Dr. Skelton's recommendation; however, according to his February 2011 function report, he reported that he was using a cane before he ever saw Dr. Skelton (Exhibit 6E). Additionally, contrary to the severe gait disturbance that Dr. Skelton observed, Dr. Davis observed no instability or other gait abnormalities at all when he saw the claimant less than a month later, and the claimant again presented without a cane or other assistive device (Exhibit 6F). Even more notable, records from the claimant's treating chiropractor consistently reflect a finding of normal gait – including his most recent documented visit in May 2012 (Exhibit 13F). The undersigned also finds it pertinent that the significant deficits in upper and lower extremity motor strength noted at the consultative examination

presented as equal and symmetrical bilaterally.  Additionally, despite the severe gait instability, the significant weakness in the arms and legs, and the significant reduction in grip strength demonstrated during Dr. Skelton's examination, the claimant reported that he had been changing oil and working on cars when he sought treatment for dermatitis at his PCP clinic a short time later.  The undersigned notes also that while the claimant complained of lower extremity pain at the hearing, he identified the site of that pain as his left leg and voiced no complaints of right knee pain or any other right lower extremity symptoms.

Despite his allegations of constant pain that, at its best, is 7-8/10, the claimant has received conservative treatment in the form of chiropractic adjustment, NSAIDs, and muscle relaxants.  There is no evidence that treatment with stronger, narcotic pain medications or a referral to a pain clinic has been suggested.  The claimant has identified his drowsiness and amount of time he sleeps during the day as contributing to his overall inability to work.  The undersigned notes, however, that he was specifically prescribed medications to induce sleep in response to his complaints of insomnia and pain-based sleep disturbances and was advised to take those medications at bedtime.  There is no evidence that the claimant has complained of excessive sedation or that he has requested that medications be changed or reduced because of excessive sedation.

The claimant clearly has functional limitations associated with his diabetes and musculoskeletal conditions, and it is reasonable that he experiences pain and fatigue associated with those conditions; however, the evidence simply fails to support the severity of symptoms alleged.  His development of neuropathic symptoms is not unexpected given his long history of uncontrolled diabetes and, as set forth above, there is objective evidence of cervical and lumbar DDD and knee and shoulder OA.  The undersigned finds it reasonable that prolonged standing and lifting and/or carrying more than 10 pounds or so could cause an exacerbation of his knee and back impairments and that his diabetes-related fatigue would preclude his ability to walk prolonged distances.  It is also reasonable that he would see an exacerbation of neck and shoulder pain with more than frequent

> overhead lifting. The undersigned has considered all of these factors as well as the nature of the claimant's particular impairments in the residual functional capacity for a restricted range of sedentary work set forth above. . . . The residual functional capacity is also consistent with the claimant's report that he cooks, performs light housekeeping and yard work, shops as necessary, drives short distances, collects rocks for a hobby, attends church, handles his own finances, etc.

(Tr. at 50-52).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he or she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996)("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole." *Id.* (internal quotations omitted). In the present case, the ALJ found that the plaintiff meets the first prong of the Eleventh Circuit's pain standard, but that

"the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are inconsistent with the evidence of record and are not fully credible." (Tr. at 50). The ALJ further proceeded to provide a detailed discussion of the discrepancies between the plaintiff's allegations of the severity of his symptoms and the medical record and the plaintiff's testimony regarding activities of daily living (changing oil and repairing cars). He also noted the very conservative nature of the treatment plaintiff received, which suggested that the pain was not as great as claimed by plaintiff. The ALJ adequately explained why he found the plaintiff's subjective testimony regarding the pain and severity of his symptoms to be less than credible.

The plaintiff further argues that the ALJ did not properly consider his medical records and the opinions of consulting physicians. The ALJ addressed the medical opinions as follows:

> As for the opinion evidence, the undersigned accords partial weight to Dr. Skelton's opinions as reflected in his report of examination but notes that the examiner included no clear functional limitations in that report other than a recommendation that the claimant use a cane for balance when necessary (Exhibit 4F). Similarly, the undersigned accorded partial weight to the opinions of the State agency medical consultant; however, given the combined effect of neuropathy with DDD and OA, a restriction to sedentary work appears more reasonable (Exhibit 10F).

17

(Tr. at 52).  Although the ALJ did not address each piece of medical evidence provided in the record, there is no requirement that he do so as long as the ALJ does not arbitrarily dismiss the plaintiff's claims.  *Dyer*, 395 F.3d at 1211.  The ALJ considered the plaintiff's medical records and provided an adequate discussion of his reasoning for giving certain medical opinions less than full weight.  Opinions regarding whether the plaintiff is disabled, his RFC, and the application of vocational factors are not medical decisions.  Such decisions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(d).

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Stowe's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

DONE this 10th day of September, 2015.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE